IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

SHELLEY L. VANSICKLE,            )
                                 )
       Plaintiff,            )
                                 )
       v.                    )    Case No. CIV-14-444-SPS
                                 )
CAROLYN COLVIN,                  )
Acting Commissioner of the Social)
Security Administration,         )
                                 )
       Defendant.            )

## OPINION AND ORDER

The claimant Shelley L. Vansickle requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); see also *Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 29, 1972, and was forty years old at the time of the most recent administrative hearing (Tr. 114, 121). She has a college education, and has worked as a counselor (Tr. 1036, 1044). The claimant alleges she has been unable to work since July 15, 2005, due to kidney problems, leg numbness, pain, depression, anxiety, posttraumatic stress disorder, bipolar disorder, and obsessive compulsive disorder (Tr. 142, 1876).

## Procedural History

On October 2, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 112-26). Her applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 6, 2009 (Tr. 9-20). The Appeals Council denied review, but this Court reversed the decision of the Commissioner on September 30, 2011, in Case No. CIV-10-054-SPS, and remanded the case to the ALJ with instructions to properly analyze the claimant's credibility (Tr. 1094-1105).

While her initial applications were pending before the Appeals Council, and prior to this Court's September 2011 decision, the claimant filed additional applications for disability insurance benefits and supplemental security income benefits (Tr. 1893-1905).

ALJ Osly Deramus conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated April 5, 2011 (Tr. 1072-88). The Appeals Council denied review, but pursuant to the Commissioner's Unopposed Motion to Remand, this Court reversed the decision of the Commissioner in Case No. CIV-12-067-SPS and remanded the case to the ALJ on October 1, 2012 (Tr. 1113-16). After the claimant's two claims were consolidated, ALJ Doug Gabbard II conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated June 28, 2013 (Tr. 1001-25, 1117-20). The Appeals Council denied review, so the ALJ's June 28, 2013, written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except she must alternate sitting and standing approximately every thirty minutes throughout the workday without leaving the workstation (Tr. 1012). Due to psychologically-based factors, the claimant could perform unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct, and concrete, interpersonal contact with co-workers is incidental to the work performed (like assembly work), and there are no dealings with the public (Tr. 1012). The ALJ concluded that although the claimant could not return to her past relevant work, she was

nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, bench assembler, laundry folder, and assembler (Tr. 1023-24).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the medical evidence of record, in particular the opinions of treating physician Dr. Victoria Pardue and physician assistant Albert McLemore, and (ii) by failing to properly analyze her credibility. The Court agrees with the claimant's first contention.

The ALJ found the claimant's history of iatrogenic ureteral injury with associated vesicoureteral reflux and long term drug use, chronic urinary tract infections, degenerative disc disease of the lumbar spine, depressive disorder, posttraumatic stress disorder, generalized anxiety disorder, and obsessive compulsive disorder were severe impairments (Tr. 1004). The relevant medical evidence reveals that in December 2002, the claimant underwent a hysterectomy during which the distal left ureter was inadvertently clipped or caught with a suture (Tr. 336, 1956). A cystoscopy and ureteroscopy on January 18, 2003, revealed the claimant had an open-ended distal ureter, and a nephrostomy tube was placed that day (Tr. 435-37, 11959-62). The claimant subsequently developed an obstruction and underwent surgery to re-implant her left ureter on April 1, 2003 (Tr. 336). A fluoroscopic X-ray of the claimant's bladder and urinary tract on August 2, 2004, revealed left ureteral reflux before and after voiding (Tr. 343). The claimant was admitted to the hospital with a urinary tract infection ("UTI") on August 20, 2003, May 17, 2005, November 14, 2005, and March 27, 2006, and was treated with intravenous fluids and antibiotics (Tr. 232-78).

Dr. Pardue regularly treated the claimant for recurrent UTIs, hematuria, low back pain, flank pain, and diabetes between April 2005 and August 2007, and again between March 2010 and May 2012 (Tr. 460-93, 1295-1329, 1476-85, 1548-1601, 1690-99, 1761-66). Apart from a January 2009 note indicating treatment for a UTI, the record does not contain any treatment notes from Dr. Pardue between September 2007 and February 2010 (Tr. 1935). Albert McLemore, a physician assistant at Dr. Pardue's clinic, treated the claimant's chronic conditions between June 2012 and December 2013 (Tr. 804-07, 872-84, 896-925, 1256-1294). Thereafter, Dr. Pardue treated the claimant for low back pain and anxiety in January and February 2014 (Tr. 808-23).

Dr. Pardue stated on two occasions that the claimant was unable to work. In a treatment note dated October 5, 2010, she opined the claimant was unable to work because of pain and left leg numbness resulting from chronic UTIs (Tr. 1647). On February 27, 2014, Dr. Pardue wrote a letter stating the claimant was unable to work at that time due to her chronic medical conditions (Tr. 786).

Mr. McLemore completed a physical medical source statement ("MSS") on January 19, 2013, wherein he opined that the claimant could occasionally lift and/or carry up to ten pounds, stand and/or walk less than two hours out of an eight-hour workday and continuously for thirty minutes, sit less than two hours out of an eight-hour workday and continuously for thirty minutes, and needed to lie down during the workday to manage pain or other symptoms (Tr. 1248-49). Mr. McLemore further found the claimant was limited in her ability to push and/or pull due to numbness in her hands and back pain (Tr. 1249). Lastly, Mr. McLemore opined that the claimant could occasionally kneel,

-6-

reach, handle, finger, and feel, but could never climb, balance, stoop, crouch, or crawl (Tr. 1249). As the basis for his opinions, Mr. McLemore wrote that the claimant's right hand numbness affects her grip, and that an MRI of her lumbar spine revealed a disc bulge at L4-5, and degenerative disc disease at L5-S1 (Tr. 1249).

At the most recent administrative hearing, the claimant testified that managing her pain prevents her from working (Tr. 1038). She stated that she has intermittent kidney spasms, constant left burning sensations, and constant left flank pain (Tr. 1042). She further testified that sitting exacerbates her condition, and that she needs to lie down for forty-five minutes every half-hour to help manage her pain and to prevent numbness in her leg (Tr. 1038). As to her pain medications, she testified her current medications combined with lying down effectively control her pain (Tr. 1040). Additionally, she stated that her providers recommended stronger pain medication, but she did not want to take anything stronger (Tr. 1039).

In his written opinion, the ALJ summarized the claimant's testimony, the Third Party Function Report, as well as the medical evidence. The ALJ assigned little weight to Dr. Pardue's October 2010 opinion and to Mr. McLemore's opinion, stating they were not supported by or consistent with the medical evidence as a whole. The ALJ did not discuss or weigh Dr. Pardue's February 2014 opinion. In support of his conclusions, the ALJ stated that neither Dr. Pardue nor Mr. McLemore suggested any limitations during the claimant's office visits, and that the claimant never complained of hand numbness. The ALJ also suggested that Dr. Pardue may have been sympathetic to the claimant's

plight, and that she and Mr. McLemore may have prepared their opinions in order to avoid tension with the claimant (Tr. 1019-20).

Although the ALJ was not required to give controlling weight to Dr. Pardue's opinions that the claimant was unable to work, *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he nevertheless was required to properly determine the weight to give such opinions by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). Instead, the ALJ simply assigned Dr. Pardue's October 2010 opinion little weight because it was not fully consistent with unspecified medical evidence of record, and then completely ignored her February 2014 opinion. Furthermore, it was error for the ALJ to reject Dr. Pardue's opinion upon speculation that she sympathized with the claimant "for one reason or another." (Tr. 1019). *See, e. g., Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report . . . was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for . . . these findings. Nothing in [the treating physician's] reports indicates . . . that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may

-8-

not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original]. The ALJ thus improperly evaluated the treating physician's opinion that the claimant was disabled.

Additionally, Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Mr. McLemore herein. *See, e. g., Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 404.1527(c), 416.927(c). Here, the ALJ

found that Mr. McLemore's opinion was inconsistent with his own treatment notes, as well as Dr. Pardue's, because neither indicated any functional limitations, and because the claimant did not complain of hand numbness (Tr. 1020).  Although the ALJ referenced the second factor, his selective review ignores that both Dr. Pardue and Mr. McLemore regularly treated the claimant for low back pain, and disregards the claimant's December 2012 lumbar spine X-ray, which Mr. McLemore used as a basis to support his opinion (Tr. 1249).  It is therefore unclear whether the ALJ considered the other factors. *See, e. g., Anderson v. Astrue,* 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original].  *See also Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") [citation omitted].  Additionally, the ALJ failed to explain why he adopted Mr. McLemore's opinion that the claimant could sit/stand for thirty minutes continuously (by including a sit/stand option every thirty minutes in the RFC) but rejected the remainder of his opinion, indicating that the ALJ engaged in improper picking and choosing among the medical reports. *See Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir.2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir.1984) ("Th[e] report is uncontradicted and the

Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly evaluate Dr. Pardue's opinions and consider the "other source" opinions provided by Mr. McLemore, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**